## Donald G. MIZE *v.* STATE of Arkansas

CA CR 79-90                                    590 S.W. 2d 75

Opinion delivered November 14, 1979
Released for publication December 5, 1979

*Dan Stripling*, for appellant.

*Steve Clark*, Atty. Gen., by: *Ray Hartenstein*, Asst. Atty. Gen., for appellee.

ERNIE E. WRIGHT, Chief Judge. The Appellant, Donald G. Mize, was convicted by a jury of battery in the first degree in violation of Ark. Stat. Ann. § 41-1601 and sentenced to five years imprisonment. From the judgment of conviction he brings this appeal urging for reversal, that the court erred in denying appellant a hearing upon his motion to suppress the in-court identification of appellant.

Trial date had been set for June 26, 1979. On June 21, 1979 appellant filed a motion to suppress testimony by State's witnesses identifying the appellant contending the identification resulted from a "police show-up" while the defendant was in custody in a police car. The motion alleged that such "show-up" was improperly conducted and improperly suggestive so as to taint the in-court identification of appellant.

Counsel for appellant first presented the motion to the court on the day of trial. The State objected to the motion as being untimely filed only five days prior to trial date contrary to Criminal Rule 16.2 (b), and argued the prosecuting witness could identify the accused without regard to having seen the accused in custody in the police car. Appellant did not contend he had been pointed out to the prosecuting witness when the witness viewed and identified the appellant in the police car shortly after the shooting. The court overruled the motion without an evidentiary hearing. Appellant's abstract does not indicate any objection to the ruling of the court.

The prosecuting witness, a young black man, testified that while he was sitting in his stalled car on a store parking lot the appellant and another man, Ricky Jackson, drove up and after appellant had made some remarks to the prosecuting witness told the prosecuting witness he had to get out of town; appellant and his companion drove away and soon thereafter a black friend of the witness, Mr. Gaston, drove up and indicated he would stay with the witness until his mother could pick him up; the witness got in the friend's truck and appellant and his companion pulled up and appellant had a shotgun sticking out the car window; Gaston pulled his truck over in front of the store and the prosecuting witness and Gaston got out to go in the store; at that time they were both struck with shots from a shotgun blast; the prosecuting witness was struck in the legs, back, elbow and arm with about 50 shots; Gaston was also struck; they went to a doctor's office where they received medical attention and then ''went outside to identify the occupants of the car''.

At that point appellant renewed his motion to suppress any in-court identification. Out of the presence of the jury, the court instructed the prosecuting witness not to go into the fact that the witness made an out-of-court identification, and denied the motion to suppress. The witness testified the appellant, Mize, was the one who fired the shotgun.

The appellant took the stand and testified he and his companion, Jackson, the driver of the car, had been drinking and rabbit shooting; that they pulled up where the prosecut-

ing witness was parked and asked if he was having trouble; that the witness called him a name; appellant told him he had better get out of town and appellant and his companion left; appellant and his companion drove back in about thirty minutes and the prosecuting witness called him a name; appellant then put the barrel of his gun out the window and told the witness and his companion they had better get out of town; appellant and his companion started into the store and appellant shot them in a fit of anger. There was no evidence of threats or violence by the prosecuting witness.

For reversal, appellant relies on *Sims* v. *State*, 258 Ark. 940, 530 S.W. 2d 182 (1975), and contends the view of the appellant by the prosecuting witness, while appellant was in custody in a police car very soon after the crime, constituted a lineup procedure within the meaning of the *Sims* case, and the identification of appellant while in custody in the police car was improperly suggestive. It is contended the procedure tainted the in-court identification of appellant by the prosecuting witness, and for this reason the in-court identification should be suppressed. While there appears to be valid reason to believe Criminal Procedure Rule 16.2 requiring motions to suppress evidence to be filed not less than ten days before trial was intended to apply to any kind of evidence and not limited to things seized in a search, we find it unnecessary to resolve this question.

The *Sims* case involved an in-court identification of the accused by the prosecuting witness after the witness had viewed the accused in a post indictment lineup, at a time when the accused had counsel. His counsel was not notified of the lineup and was not present. In the present case the appellant had not been indicted and had no counsel. It was important as a practical law enforcement procedure for the police to make a judgment as to whether appellant was the person to be held. The view of appellant in the police car occurred very shortly after the assault and there is no contention by appellant that he was pointed out to the prosecuting witness by any one as the person making the assault. Also, the assault took place in daylight and the prosecuting witness, having been encountered by the appellant shortly prior to the final assault, had ample opportunity to view

appellant, thus having a basis to reliably identify the appellant without reference to the in-custody view of appellant. The in-custody view here complained of served primarily to enable the police to determine they had custody of the person who had committed the assault.

The circumstances of the present case are controlled by *Lindsey and Jackson* v. *State*, 264 Ark. 430, 572 S.W. 2d 145 (1978), rather than by *Sims*. In *Lindsey* appellants objected to their in-court identification by the robbery victim on the ground they had been subjected to an out-of-court identification which did not involve a proper lineup. Appellants contended the out-of-court identification, which consisted of a view of the appellants promptly after the robbery, was suggestive and impermissible. The court held that a confrontation between a victim and suspect that takes place at a show-up rather than a lineup does not, without more, constitute a violation of constitutional rights. The court cited *Manson* v. *Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243 (1977) which held that reliability is the linchpin in determining the admissibility of identification testimony based on confrontation and that if from the totality of the circumstances the confrontation did not give rise to a very substantial likelihood of irreparable misidentification, the in-court identification is properly admitted.

We hold from the totality of circumstances here there is no reasonable basis for contending the view of appellant by the prosecuting witness very soon after the assault and while the appellant was in police custody created a substantial likelihood of irreparable misidentification.

In this case, even if it be said it was error for the court to refuse the appellant's motion for an evidentiary hearing on the motion to suppress an in-court identification of the appellant, reversal would not be required.

In *Motes* v. *U.S.*, 178 U.S. 458, 20 S. Ct. 993 (1899), a written out of court statement of a witness was admitted in evidence against appellant over objection. On appeal the court said the improper admission of the evidence violated appellant's constitutional rights to be confronted with wit-

nesses against him. However, the court held, as the appellant took the stand and gave testimony of his actions which were clearly a violation of the law involved, the jury had conclusive proof of appellant's guilt, and the improper admission of the incompetent evidence was of no consequence to appellant, and not prejudicial. This case was a forerunner of the modern rule set out in *Schneble* v. *Florida*, 405 U.S. 427, 92 S. Ct. 1056 (1972). There, even though the defendant did not take the stand, the court held the admission of certain incompetent evidence against the accused violated his constitutional rights, but that the error was harmless because the overwhelming properly admitted evidence of guilt was such that the mind of an average jury would not have found the State's case significantly less persuasive, if the court had excluded the incompetent evidence.

We affirm.