John Franklin TROLLINGER
*v.* STATE of Arkansas

CA CR 84-158                              686 S.W.2d 796

Court of Appeals of Arkansas
Division II
Opinion delivered March 27, 1985
[Rehearing denied April 24, 1985.]

*Darrell E. Baker, Jr.,* Deputy Public Defender, for appellant.

*Steve Clark,* Att'y Gen., by: *Velda P. West,* Asst. Att'y Gen., for appellee.

GEORGE K. CRACRAFT, Judge. John Franklin Trollinger appeals from his conviction of the crimes of burglary and theft of property contending that the trial court erred in admitting evidence obtained in violation of his Fifth and Fourteenth Amendment rights. We find no merit to these contentions.

At a pretrial hearing on a motion to suppress the police officers testified that on November 28, 1983 they obtained information that the appellant had participated in a series of burglaries then under investigation. The appellant was voluntarily brought to the police station and after being fully advised of his *Miranda* rights he stated that he wished to have an attorney present during any further questioning. According to the police officer he ceased questioning the appellant but did tell him what he was being charged with and what he believed could be proved against him. The police officer testified that he was interrupted by the appellant who stated that he was drunk when he did it. The officer said that he told appellant that he could not talk to him and did not want to talk about the details of the charge. After completing this statement, the officer testified:

> John asked for help. He wanted to know what to do. I couldn't promise him anything or make any deals with him. He wanted to know who could. I told him that the only man that could make any kind of deal was the prosecuting attorney, Kim Smith. John asked me to call Mr. Smith and I did.

Appellant admitted his involvement in the crime to the prosecutor and was told that he could give a written statement to the officers if he wished but due to his past criminal record it would be recommended that he be sent to the Department of Correction for seven years and not placed on probation.

The police officer then readvised appellant of all of his *Miranda* rights, including the right to have an attorney present, and the appellant executed a written acknowledgment stating that he did not wish to have an attorney present. Appellant then fully admitted his participation in the crime, named his accomplices and assisted the officers in recovering the stolen articles. The appellant gave no testimony at the suppression hearing. The trial court found that although the appellant had initially asserted his constitutional right to having an attorney present during questioning, he had subsequently waived that right intelligently and knowingly.

As a general proposition once a suspect in custody requests counsel the questioning must cease and cannot be reinitiated by the officers. However, if the accused initiates contact with the authorities and knowingly and intelligently repudiates his previous request for counsel, a voluntary statement may be made. *Edwards* v. *Arizona*, 451 U.S. 477 (1981); *Oregon* v. *Bradshaw*, ___ U.S. ___ , 77 L. Ed.2d 405 (1983); *Dillard* v. *State*, 275 Ark. 320, 629 S.W.2d 291 (1982).

The appellant argues that the trial court's finding that the questioning ceased when request for counsel was made was clearly erroneous. He contends that the statements of the police officer concerning what he believed he could prove amounted to interrogation. He further argues that as the police had only an anonymous tip prior to interviewing appellant, his waiver of right to counsel in the face of evidence so slight could not be said to have been either intelligent or knowledgeable.

On appeal we review these matters independently, considering the totality of the circumstances and do not

reverse the trial court unless its ruling is clearly erroneous. *Harris* v. *State*, 278 Ark. 612, 648 S.W.2d 47 (1983); *Coble* v. *State*, 274 Ark. 134, 624 S.W.2d 421 (1981). The police officer stated that at the time the request was made he ceased questioning the accused and cautioned him about spontaneous statements. He further stated that all he did was make a statement to the appellant of what information the police then had connecting him to the crime. He stated it was at the appellant's request that he was taken to the prosecuting attorney's office and after appellant initiated that further contact he was again advised of his right to counsel which he specifically waived in writing.

The facts of this case are peculiarly similar to those in *Oregon* v. *Bradshaw, supra.* There the suspect, after being advised of his *Miranda* rights, made known his desire to assert his right to counsel. All questioning stopped immediately. While being transported to jail the accused asked the officer, "What is going to happen next?" He was reminded that questioning had ceased and said he understood. A discussion about where he was being taken and the offense with which he was to be charged followed. The officer suggested and the accused agreed that he might help himself by taking a polygraph examination. The accused took the polygraph after again being read his rights and after signing a written waiver of rights. When the unfavorable result of that test was made known to the accused he recanted his earlier denials and confessed to every element of the crime with which he was charged. There the court ruled that the accused's question as to what was going to happen to him evidenced a "willingness and desire for a generalized discussion" about the case. In *Bradshaw* the court made it clear that the holding in *Edwards* was that after a right to counsel has been asserted, further interrogation was not to take place unless the accused himself initiates further communication, exchanges, or conversations with the police. It described this as a "prophylactic rule" designed to protect the accused from being badgered by the police, as happened in *Edwards*.

In that case, as in *Bradshaw,* after the request for counsel was made the officer merely outlined the nature of

the charge and the evidence against the accused. He again cautioned him not to discuss the case. However, the appellant initiated further conversation by asking for help and who could give it to him, and requesting to be taken to the prosecutor when told he would be the one to speak with. Upon arrival in the prosecutor's office appellant initiated conversation with him which implicated him and others in the crime for which he was charged. Subsequently he gave a full written statement and repudiated in writing his prior request for counsel. In *Bradshaw* the court found no violation of the *Edwards* rule and we see none here.

The trial judge was correct in holding that the interrogation ceased when right to counsel was asserted. The "interrogation" prohibited by *Edwards* extends to both express questioning and its "functional equivalent." It includes other words and actions of the police officers they should know are reasonably calculated to elicit an incriminating statement. The latter definition focuses on the perception of the accused rather than the intent of the police. *Rhode Island* v. *Innis*, 446 U.S. 291 (1979). We cannot conclude and nothing in the record suggests that the police officer should have known that his statement to the appellant was reasonably likely to elicit an incriminating statement or to invite a response. On the contrary, when appellant did respond he was cautioned not to. Voluntary statements are not barred by the Fifth Amendment. See *Innis, supra.*

The next inquiry is whether the written repudiation of his request for counsel was knowing and intelligent. This is to be found by examination of all the facts and circumstances, including the fact that the appellant reopened dialogue with the police, and the background, conduct and experience of the appellant. *Oregon* v. *Bradshaw, supra.*

From our examination of the record we find that the trial court's findings that the appellant himself reopened conversation with the police officers after requesting counsel and that his repudiation of that request was knowingly and intelligently made, were not clearly erroneous.

His statement was not given under compulsion but was motivated by his desire to exchange cooperation for leniency. He asked for help and for the person who might help him, clearly showing a willingness and desire for further discussion. Appellant's request to be taken immediately to the prosecutor and his initiation of a conversation with him evidence a knowing and intelligent waiver of rights.

At the trial on the merits the appellant took the witness stand in his own behalf. He did not give any testimony in his defense but confessed to the crime on the witness stand and on a plea for mitigation outlined his actions in assisting the police in both the recovery of the property and the arrest of his accomplices. When he did this the jury had conclusive proof of his guilt and admission of evidence, even if improper, could not have been prejudicial. *Motes* v. *U.S.*, 178 U.S. 458 (1899); *Mize* v. *State*, 267 Ark. 743, 590 S.W.2d 75 (Ark. App. 1979); *Hays* v. *State*, 268 Ark. 701, 597 S.W.2d 821 (Ark. App. 1980).

Affirmed.

CORBIN and GLAZE, JJ., agree.